RECEIVED
IN LAKE CHARLES, LA

JUL -7 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RAVIN STEVENSON CARRIER** | : | **DOCKET NO. 2:05 CV 1509** |
| **VS.** | : | **JUDGE MINALDI** |
| **VETERANS LIFE INSURANCE COMPANY** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Presently before the court are cross motions for summary judgment filed by Veterans Life Insurance Company ("Veterans") [doc. 14] and by Ravin Stevenson Carrier ("Carrier") [doc. 16].[1]

The facts are uncontested. Veterans issued an accidental death insurance certificate to James B. Stevenson, Jr. ("Stevenson"), effective May 8, 2002[2] in the amount of $200,000.00. Carrier is the sole beneficiary. Stevenson died on July 26, 2004.

Stevenson was blind, as a result of glaucoma. He fell down a flight of stairs while at the home of Brenda Thomas.

The policy includes an intoxication exclusion. The exclusion provides that no benefit shall be paid for death "caused by or resulting from...(4) a blood alcohol level of .10% (by weight or volume) or higher, or acting under the influence or effects of any alcohol."

---

[1]  Ravin Carrier's motion is styled a "Partial Motion for Summary Judgment" as the plaintiff reserves the right to seek penalties at trial. The plaintiff should note *Moore v. Central American Life Insurance Company*, 535 So.2d 773 (La. App. 2 Cir.), in which the court held that the beneficiary under the policy was not entitled to recover penalties for the insurer's failure to pay a claim after obtaining information of the insured's possible intoxication at the time of the fall, even though intoxication was a defense that ultimately failed.

[2]  Defendant's Exhibit A-1.

Stevenson fell down a flight of stairs at approximately 1:00 a.m. after drinking heavily and suffered severe brain injuries that resulted in his death. After arriving at the hospital, Stevenson's blood was tested and his serum blood level was 0.31 grams percent and his blood alcohol was 0.26 grams percent.

## Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact. [3] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

---

[3] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

## Analysis

Veterans asserts that Stevenson's death resulted from a fall caused by his intoxication. Carrier argues that Stevenson's death was caused by his fall down a flight of stairs which was the result of his being blind and in an unfamiliar apartment when he fell. Veterans argues that this scenario fits squarely within the intoxication exclusion of the policy. Carrier submits that it does not. Veterans asserts that, "while in an ordinary case an issue such as causation might appear to be an issue for trial, in this case the material facts are uncontested and the plaintiff will be unable to respond with facts sufficient to sustain her burden of proof at trial."

The evidence shows that Stevenson fell down a flight of stairs and sustained head injuries. He arrived at Lake Charles memorial Hospital in a comatose state. He was transported to Lafayette General Medical Center and never regained consciousness. The statement of the attending physician, Dr. Ricardo Leoni, identified the primary cause of death as a subdural hematoma. Dr. Leoni

identified an alcohol level of .311 as the "secondary or contributory cause of death."[4]

No one witnessed the fall. Brenda Thomas lived in the apartment where the fall occurred. The plaintiff believes that Thomas was in the apartment, though not an eyewitness, at the time of the fall. Thomas' whereabouts are unknown. There are no other known witnesses.

The emergency room records indicate that Stevenson "had been drinking heavily, and he fell forward down a full flight of stairs. Family repositioned patient at bottom of stairs and noted bleeding from his left ear." There is no indication who provided this information to the emergency room doctor. Nor is the "family" identified.[5]

The results of an EEG performed by Dr. Steven Snatic reflected "electrocerebral silence compatible with cerebral death."[6] The discharge notes of the treating physician, Dr. Leoni, indicate that Stevenson was considered brain dead.[7] The medical records indicate that Stevenson had a serum alcohol level of 0.311 grams percent and was highly intoxicated.[8] A serum alcohol level of 0.311% converts to a blood alcohol level of approximately 0.26 grams percent.

Veteran's medical director, Dr. Norman S. Knee, reviewed the file and concluded that Stevenson's death resulted from a blood alcohol level greater than .10% and while acting under the

---

[4]    Defendant Exhibit A-3.

[5]    Defendant Ex. A-5.

[6]    Defendant Ex. A-6 at V-054.

[7]    Defendant Ex. A-7 at V-056.

[8]    Defendant Exs. A-4 through A-7.

influence and effects of alcohol.[9]

Veterans also sought the opinion of a toxicologist, Dr. Gary Wimbish of Forensic Toxicology Laboratories, Inc. Dr. Wimbish opined that Stevenson was intoxicated and that his intoxication was a direct and proximate cause of his fatal fall and death. Dr. Wimbish testified that alcohol ingestion leads to a number of impairments, including a slowing of reflex reaction, diminution in critical judgment and the ability to concentrate, and diminution in the ability to discern and respond to a dangerous situation. He testified that a level of 0.26% gram percent, a person's response to an emergency situation would be significantly delayed, the decision making process would be significantly altered and the reaction time is reduced by at least fifty percent. Further, Dr. Wimbish testified that Stevenson's status as legally blind does not affect his conclusions regarding causation. Ultimately, he opined that Stevenson's fall was directly related to his intoxication and would be considered a proximate cause of his death.[10] Dr. Wimbish also acknowledged that he did not learn of Stevenson's blindness until after he wrote his report.[11]

The plaintiff states that Dr. Wimbish testified that he could not conclude that intoxication was the cause of Stevenson's fall. Dr. Wimbish testified that "[a]lcohol is only a contributing factor. It is not maybe the cause of the fall. The alcohol didn't push him down the stairs, the best way to

---

[9] The only question posed to Dr. Knee in Defendant's Ex. A-8 is "Was Mr. Stevenson's death caused by or resulting from a blood alcohol level of .10% (by weight or volume) or higher, or acting under the influence or effects of any alcohol? The response by Dr. Knee states "I have reviewed this file and find the following in answer to your query: 1. Mr. Stevenson's death resulted from a blood alcohol level of .10% by weight or volume or higher, or acting under the influence or effects of alcohol."

[10] Defendant's Ex. B.

[11] Depo. of Dr. Wimbish, p.24 line1 10-12.

put that."[12] The plaintiff states that later in his deposition, DR. Wimbish changed his opinion. Instead of his original statement , "the fall was directly related to his intoxication," Dr. Wimbish explained that alcohol did not cause the fall but may have reduces Stevenson's ability to respond to the fall, i.e., he may not have been able to grab the handrail or break his fall.

Dr. Wimbish also stated that "his [Stevenson's] impairment, and alcohol is a proximate cause, but not all of the factors involved in the fall. I have no idea about the stairwell construction, the floor, carpet, any detriments in that area. I have nothing- no knowledge of that whatsoever."[13] Alcohol was the proximate, but not the total cause of Stevenson's fall.[14] Dr. Wimbish testified that "Alcohol is only a contributing factor. It may not be the cause of the fall. The alcohol didn't push him down the stairs, the best way to put that."[15] The plaintiff has offered no competent summary judgment evidence to counter Dr. Wimbish's opinion that alcohol was the proximate cause of Stevenson's death.

An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. *Ledbetter v. Concord General Corp.*, 95-0809 (La.1/6/96), 665 So.2d 1166, *Judgment amended by*, 95-0809 (La.4/18/96), 671 So.2d 915. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. *See* La. CC. art.2046; *Magnon v. Collins*, 98-2822 (La.7/7/99), 739 So.2d 191. Further, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory

---

[12]    Depo. of Dr. Wimbish, p.21 line 15.

[13]    Depo. of Dr. Wimbish, p.2-18 lines 18-23.

[14]    Depo. of Dr. Wimbish, p.20 lines 12-13.

[15]    Depo. of Dr. Wimbish, p.21 line 15-17.

6

provisions or public policy. *Reynolds v. Select Properties, Ltd.,* 93-1480 (La.4/11/94), 634 So.2d 1180. The insurer, however, has the burden of proving that a loss comes within a policy exclusion. *Fields v. American Cent. Ins. Co.,* 923 So.2d 967, 970, 40,738 , **5-6 (La.App. 2 Cir.,2006); *Broadmoor Anderson v. National Union Fire Ins. Co. of Louisiana,* 40,096 (La.App.2d Cir.9/28/05), 912 So.2d 400.

It is undisputed that Stevenson's death is covered by the terms of the Accidental Death Certificate. The Certificate provides in part:

> "We pay a benefit if an insured dies as the result of an injury. The accidental death must occur within 90 days of the accident causing the injury."

The exclusion reads:

> "This certificate does not cover **death caused by or resulting from** any of the following:
>
> (4) a blood alcohol level of 0.1 or higher, **or acting under the influence or effects of alcohol.**" (Emphasis added).

The plaintiff argues that Stevenson did not die as a result of having a blood alcohol level of 0.1 or higher, but from falling down the stairs. Veterans argues that Stevenson's death was caused by or resulting from a blood alcohol level of 0.1 or greater or acting under the effects of alcohol.

In order for the intoxication exclusion to apply, the defendants must prove two propositions by a preponderance of the evidence: (1) that Stevenson was intoxicated at the time of his fatal accident and (2) that his intoxication was a contributing cause of the accident. See, e.g., *Parker v. Kroger's Inc.,* 394 So.2d 1178 (La.1981); *Matthews v. All American Assurance Co.,* 226 So.2d 181 (La.App. 3d Cir.), *writ denied,* 254 La. 923, 228 So.2d 483 (1969); *Richard v. American Home Assurance Co.,* 318 So.2d 613 (La.App. 3d Cir.), *writ denied,* 322 So.2d 779 (La.1975); *Ober v.*

*CUNA Mutual Society,* 645 So.2d 231 (La.App. 2d Cir.1994); *Capital Bank and Trust Co. v. Equitable Life Assurance Soc.,* 542 So.2d 494 (La.1989). While it is stipulated that Stevenson was intoxicated at the time of his fall, Carrier argues that the defendant has failed to carry its burden of proving by a preponderance of the evidence that intoxication was a contributing cause of his fatality. This argument is not persuasive.

LSA-R.S. 22:213(B)(10) allows insurers to exclude from coverage "any loss sustained ⋯ in consequence of the insured's being intoxicated or under the influence of narcotics unless administered on the advice of a physician." While the statute does not define intoxication, the courts have applied the definition utilized in negligence cases-that the person has had a sufficient quantity of intoxicants to make him lose control of his mental and physical faculties. *Moore v. Central American Life Ins. Co.,* 535 So.2d 773 (La.App. 2nd Cir.1988) (citation omitted). Applying the definition to the present case, there is no genuine issue of material fact that the accident in question falls within the definition of intoxication. The blood tests of Stevenson after the accident revealed the presence of alcohol at a level of .26 percent. After considering the evidence and the law, it is clear that Stevenson had a sufficient quantity of alcohol to make him lose control of his mental and physical faculties at the time of his fatal accident, and that his intoxication was, at the very least, a contributing cause of his accident.[16]

Carrier argues that this case is similar to *Moore v. Central American Life Insurance Company,* 535 So.2d 773 (La. Ap.2 Cir. 1988). In *Moore,* the plaintiff, a frail woman, fell and hit her head on a shelf while shopping. After arriving at the hospital, Moore was found to have an

---

[16]     Landry v. J.C. Penney Life Ins. Co. 920 F.Supp. 99 (1995), 102 -103
(W.D.La.,1995).

alcohol level of 0.09. The Court concluded that, even if Moore was under the influence of alcohol, there was no evidence to substantiate a finding that intoxication was the cause of her fall. Moore was a frail woman who had been ill. No witnesses saw Moore fall and there was no evidence of what caused her fall. The court found that the defendant failed to prove by a preponderance of the evidence that she fell as a result of intoxication. The court held that they were prohibited from speculating about whether alcohol was a contributing cause of her fall without factual support. Carrier argues that the result is the same in the instant case if we substitute "blind" for "frail." The *Moore* case is distinguishable as there was no evidence in *Moore* that the insured was intoxicated at the time of the fall. This is not the case with Stevenson. He was undisputably intoxicated at the time of his fall.

Carrier argues that the language of the exclusion is ambiguous. The certificate does not define "caused by or resulting from a blood alcohol level of 0.1 or greater or acting under the effects of alcohol." Carrier argues that a reasonable interpretation of this language is that the exclusion refers to alcohol as the direct cause, not a possible or contributing factor in the death. This argument is not supported by jurisprudence.

In *Ober v. CUNA Mut. Soc.*, 645 So.2d 231, 236, 26,208 , **9-10 (La.App. 2 Cir.,1994) an argument similar to that being advanced by Carrier was made by Ober's heirs. They argued on appeal that Ober's death was caused, not by his driving while intoxicated, but by excessive blood loss. The Second Circuit Court of Appeal found that this reasoning glossed over the fact that the massive blood loss was caused by injuries sustained in the accident which occurred while Ober was driving while intoxicated. The court held CUNA, the insurer, did not need to eliminate all other possible causes of the accident to invoke the policy exception. The language of the policy said

"caused by or resulting from." In the *Ober* case, the court opined that a fair construction in the ordinary sense of this language would encompass driving while intoxicated as a contributing cause of the accident. Likewise, a reasonable interpretation of "caused by or resulting from a blood alcohol level of 0.1 or greater or acting under the effects of alcohol" in the case at bar would encompass falling down a flight of stairs while severely intoxicated as a contributing cause of this accident.

There are no genuine issues of material fact in the case at bar. The evidence establishes that Stevenson was inebriated when he fell down the stairs and received the injuries resulting in his death. This intoxication was a contributing cause of Stevenson's death as was established by the testimony of Dr. Wimbish. The plaintiff introduced no competent summary judgment evidence to counter this testimony. This accident falls within the exclusion contained in the accidental death policy issued by Veterans.

Accordingly, the Motions for Summary Judgment filed by Veterans Life Insurance Company will be granted. The Motion for Partial Summary Judgment filed by Carrier will be denied.

Lake Charles, Louisiana, this __7__ day of July, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE